CITY OF HURON, Respondent, v. DAKOTA CENTRAL TELEPHONE CO., Appellant.

(193 N. W. 673.)

(File No. 4663.   Opinion filed May 17, 1923.)

1.   **Telegraphs and Telephones—Ordinances—Municipal Corporations —Telephone Company Held Not to Have Accepted Ordinance Requiring Payment of Percentage of Gross Earnings**

Where a telephone company, with knowledge and acquiescence of the municipality, made its extensions in defiance of a requirement of an ordinance that it must file a formal acceptance of the ordinance, and refused to accept a proviso of that ordinance requiring, as a condition precedent to its right to extend its operations, the payment to the city of 3 per cent of its gross earnings, it did not accept the ordinance.

2.   **Telegraphs and Telephones—Ordinances—Rates—Railroad Commissioners—Ordinance Held Unfair in Requiring Payment of a Percentage of Gross Earnings.**

Where plaintiff municipality participated in the hearing before the board of railroad commissioners in fixing the rates to be charged by defendant telephone company, and the rates were fixed by the commission so as to give a return of 5 per cent on defendant's real estate and 5½ per cent on its plant, but this determination of rates did not take into consideration any payment by defendant to plaintiff of a percentage of defendant's gross earnings under the terms of plaintiff's ordi-

nance, it would be unfair to require such payment to plaintiff; it being fair to presume that, if plaintiff had insisted upon compliance with the ordinance, the rates would have been increased to cover such additional expense.

Dillon, J., dissenting.

Appeal from Circuit Court, Beadle County; HON. ALVA E. TAYLOR, Judge.

Action by the City of Huron against the Dakota Central Telephone Company. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed and remanded.

*Null & Royhl,* of Huron, for Appellant.

*Fred Duffy,* of Huron, for Respondent.

On presumption as to acceptance, Appellant cited: Savings & L. Soc. v. Burnett, 106 Cal. 529, 39 Pac. 922; that company bound to extend lines and supply service: C. U. Tel. Co. v. State, 118 Ind. 194, 19 N. E. 604, 10 Am. St. 114; C. U. Tel. Co. v. Falley, 118 Ind. 198, 20 N. E. 145; Gardner v. Providence Telephone Co., 23 R. I. 262, 49 Atl. 1104; C. U. Tel. Co. v. Northeastern Telephone Co., 61 Vt. 241, 17 Atl. 1071; Cumberland Telephone & Telegraph Company v. Kelley, 87 C. C. A. 268; Mountain Telephone & Telegraph Co., P. U. R., L. R. A. 1916B, 169; that act of municipal corporation must be by ordinance: State v. Newark, 23 Atl. 284; West Jersey Traction Co. v. Shivers, 33 Atl. 55; Indianapolis v. Miller, 27 Ind. 394; Hunt v. Lambertville, 45 N. J. L. 279.

That municipality may impose restrictions, Respondent cited: 27 Am. & Eng. Ency. of Law 154; Southern Bell Tel. Co. v. Richmond, 44 C. C. A. 147; People v. Suburban Ry. Co., 178 Ill. 594; Coverdale v. Edwards, 156 Ind. 374; Pac. Ry. Co. v. Leavenworth, 1 Dill (U. S.) 393; Chicago, etc., Ry. Co. v. Dunbar, 100 Ill. 110; State ex rel. Tel. Co. v. City of Sheboygan, 86 N. W. 366; McQuillan Municipal Ordinances, Sec. 569; Northern Central Ry. Co. v. Baltimore, 21 Md. 93; Ghee v. Northern Union Gas Co., 158 N. Y. 510; Cumberland Tel. & Tel. Co. v. City of Evansville, 127 Fed. 187; that contract created by acceptance of ordinance: Cumberland Tel. & Tel. Co. v. Cartwright Creek Tel. Co., 108 S. W. 875; Williams v. Citizens R. R. Co., 130 Ind. 71;

New Orleans v. Great Southern Tel. Ex. Co., 8 Am. St. Rep. 502; City of Lancaster v. Briggs et al, 96 S. W. 314; Mahan v. Michigan Tel. Co., 93 N. W. 629; Michigan Tel. Co. v. City of St. Joseph, 88 N. W. 313; City of James town v. Home Tel. Co., 109 N. Y. S. 297; Brewg. Co. v. Flannery, 137 Ill. 309; Eckman v. C. B. & Q. Ry. Co., 169 Ill. 312; on power of city to impose money charge: City of St. Louis v. Western U. T. Co., 148 U. S. 92; City of Vermillion v. N. W. Tel. Ex. Co., 189 Fed. 289.

GATES, J.  Defendant had been operating a telephone exchange at Huron. In January, 1908, the city, claiming that defendant's rights would expire in March, adopted a resolution requiring defendant to vacate. Litigation followed. On July 23, 1909, the city adopted the following resolution:

"Whereas, in February, 1909, a decree was entered in the United States Circuit Court at Sioux Falls, S. D., in the case of Dakota Central Telephone Company v. City of Huron, in which it was adjudged that the telephone company had a right to maintain and operate its telephone lines and exchange in the city of Huron, subject only to the police power conferred on the city, and wherein the city of Huron was forever enjoined from removing, destroying or damaging the property of the telephone company in the city and was enjoined from in any manner interfering with the telephone company in the maintaining and operating of said telephone lines and exchange, and

"Whereas, recently in a suit brought by the city of Huron against the telephone company in the circuit court for Beadle county, S. D., Judge Taylor followed the decision of the United States court in so far as the same related to the telephone exchange and existing lines, but Judge Taylor decided that the telephone company did not have the right to make extensions and additions to its telephone lines into new streets and alleys without the consent of the city, and

"Whereas, since Judge Taylor's decision, the United States court has decided that the telephone company did possess the right to make all such extensions and additions to its lines as might be necessary to supply telephone and telephone service to all the citizens of Huron who might apply therefor, and

"Whereas, it appears from the decision of the courts that the

Dakota Central Telephone Company has the right to continue the operation of its telephone lines and exchange in the city of Huron and that the city of Huron is without power to oust the company from the city so far as the courts have now decided, and

"Whereas, the only question now in dispute is the right of the company to make extensions and additions to existing lines and on the question the federal and state circuit court disagree, and

"Whereas, the city council and the citizens, are anxious and desirous of the city of Huron owning its telephone plant but as it appears by the report filed by the parties having the raising of funds and the promotion of a municipal telephone system in charge, that the city cannot at this time procure the necessary funds to establish a municipal telephone plant and as it is evident that a further continuance of the present litigation with the Dakota Central Telephone Company will involve a great expenditure of money by the city, to no advantage and since the city cannot at the present time own its own telephone system and the people are nearly unanimous in their opposition to having two telephone systems in Huron and there being nothing in the present controversy between the city of Huron and the Dakota Central Telephone Company that will in any manner stop the city of Huron from installing a municipal plant at any time, when the necessary funds can be raised by the citizens or apportioned out of the general fund of the city, and

"Whereas, a large number of the citizens of Huron are now deprived of the benefits of telephone and telephone service by reason of the litigation over the matter and in order to stop the litigation and the expenditure of money which it involves and in order to have a more up-to-date telephone system in Huron, and also to give the citizens telephone service who are now deprived of such service by reason of the litigation between the city of Huron and the Dakota Central Telephone Company:

"Now therefore, to the end that all citizens of Huron may have telephone and telephone service without burdening the city with two exchanges, and also to save the city the expense of continuing its present lawsuit with the Dakota Central Telephone Company and for the good of the citizens of Huron generally, be it

"Resolved, that consent be and is hereby given the Dakota Central Telephone Company for the construction of all such telephone lines, extensions and additions as may be necessary to supply every citizen of Huron with telephone and telephone service who may apply therefor.

"(1)   Provided, that such extensions shall be constructed under the supervision and direction of the street and alley committee and that the poles shall be set in alleys instead of streets wherever practicable, and

"(2)   Provided, further that the Dakota .Central shall remove all its poles from the streets within the fire limits of the city and place its wire in such fire limits underground, terminating on such poles in the alleys. as shall be necessary for distribution in each block.   Such work of placing the wires underground to be begun within 30 days from this date, and be carried on continuously until completed, and

"(3)   Provided, further that the Dakota Central Telephone Company shall within one year from this date install an automatic telephone exchange system, but shall at all times furnish to subscribers in Huron, either ordinary or automatic telephones as the subscribers may desire at the same price for the ordinary telephones that the company is now charging in Huron and the price for the automatic telephone to the citizens of Huron shall not exceed $3.50 per month for business phones and $1.50 per month for resident phones, and

"(4)   Provided, further that the Dakota Central Telephone Company shall furnish telephones and fire alarm service and telephones to the city for purposes on the terms and conditions prescribed in the ordinance of March 10, 1898, and

"(5)   Provided, that the Dakota Central Telephone Company pay to the city of Huron for the privilege, the sum of three (3) per cent on its gross earnings from the Huron exchange, the first payment to be made to the city of Huron, March 1, 1910, yearly thereafter on the same date during the time that the Dakota Central Telephone Company, its successors or assigns operates their telephone system in the city of Huron.   The Dakota Central Telephone Company is to furnish a sworn statement of the gross earnings of the Huron exchange and agree to allow the

city council to examine their books when such report is made, if the council so desires, and

"(6)   Provided, further that all litigation now pending between the city and the telephone company shall be discontinued without cost to the city, the telephone company to pay all unpaid costs and release the city from all claim for costs heretofore incurred, and

"(7)   Provided, further that before any rights under this resolution shall be exercised by the Dakota Central Telephone Company, and within three (3) days from this date, the Dakota Central Telephone Company shall file with the city clerk a written acceptance of all the terms and provisions of this resolution."

Claiming that defendant has accepted the terms of said resolution, the city brought this action March 25, 1911, to recover 3 per cent of defendant's gross earnings under the fifth proviso of the resolution for the periods ending March 1, 1910, and March 1, 1911.

The trial court found that—

Defendant "duly accepted the terms and conditions of said resolution, although such acceptance was not made in writing and plaintiff waived written acceptance thereof, and the said acceptance was made and became effective on or about August 1, 1909."

Judgment was entered for plaintiff. Defendant appeals therefrom and from an order denying new trial.

[1]   The arguments have taken quite a wide range, but we deem it unnecessary to consider more than one point. The evidence offered, although a portion of it was afterwards stricken, tended to show that defendant prepared and signed a written acceptance, expressly omitting, however, an acceptance of the fifth proviso, that such written acceptance was left with the city auditor; that he returned it and said:

"The city would not accept it because it did not accept and agree to pay the 3 per cent on gross earnings; that we would have to give an acceptance broad enough to accept that before the council would receive it and before he would file it."

We find no justification whatever for the finding of the trial court that defendant did accept the resolution. We find no justi-

fication for the finding that the city had waived written acceptance. If the trial court had omitted the word "written" therefrom, we think it would have more nearly conformed to the proof. We therefore fail to find any contract by which the defendant agreed to pay the city any portion of its gross earnings. Defendant with the knowledge and acquiescence of the city made its extensions in defiance of the requirement that it must file a formal acceptance of the ordinance. It expressly refused to accept the fifth proviso. How then can it be said to have accepted that which it has openly and avowedly refused to accept?

[2] There is another reason that would render it unjust to require such payment. In 1910 the matter of the rates to be charged by defendant was before the board of railroad commissioners in which the city participated and rates were fixed by the commission calculated to give a return of 5 per cent on defendant's real estate and 5½ per cent on defendant's plant. This determination did not take into consideration any payment by defendant to the city under the terms of the fifth proviso of the resolution. If the city had then insisted upon compliance with that proviso, it is fair to presume that the rates would have been increased to cover such additional expense.

The judgment and order appealed from are reversed, and the cause remanded for further proceedings in harmony with this opinion.

DILLON, J. I dissent from the conclusions reached by my associates.

The trial court found that the defendant "duly accepted the terms and conditions of said resolution, * * * and plaintiff waived written acceptance thereof." The opinion says:

"We find no justification whatever for the finding of the trial court that defendant did accept the resolution." "We find no justification for the finding that the city had waived written acceptance."

The city council passed the resolution and was bound by it; they were suing upon it. These facts alone constituted an acceptance of all its terms. For many years the city and the defendant acquiesced and acted upon this ordinance except that portion which required the payment of a rental. The defendant desired

to extend and expand its plant and needed the consent of the city
to do so.  In accordance with the terms of the resolution, defend-
ant extended its pole lines, wires, and equipment into the unoccu-
pied territory, installing telephone instruments in such new terri-
tory, removing its poles from the streets and alleys within the fire
limits, and placing its wires within said fire limits under the
ground, installing a new automatic telephone system, terminating
the pending litigation between the parties in the state and federal
courts, and settling the costs and thus closing the litigation.

Every one of these acts constituted an approval, an acquies-
cence, and acceptance of the ordinance.  If such was not the in-
tent, then the defendant was occupying the streets and alleys
without the consent of the city; every dollar spent, every pole
erected, the restringing of the wires, the placing of the wires un-
der ground, the installing of the new automatic system, the ap-
pearance before the Railroad Commission as to rates and charges,
were all acts of approval and acceptance.

Certainly the trial court was justified in making the finding
of waiver and approval.  Defendant cannot accept the benefits
and at the same time refuse the burdens.  Under the ordinance
defendant was granted the right of occupying the streets and
alleys, and the instrument that permitted these things to be done
provided for the payment of annual rentals for the use of the
streets and alleys, and every day of such occupancy constituted an
approval and acceptance of the ordinance. When a license is given
to the defendant to use the streets and alleys of the city and is
acted upon, the ordinance becomes a valid contract which estops
the grantees from denying the validity of the ordinance.

"It is the settled law in this state that the findings of the trial
court are presumptively correct and will not be disturbed on ap-
peal unless it appears from the record that there is a clear pre-
ponderance of the evidence against them."

Note—Reported in 193 N. W. 673.  See, Headnote (1), Ameri-
can Key-Numbered Digest, Telegraphs and telephones, Key-No. 10(9),
37 Cyc. 1632, 26 R. C. L. 505; (2) Telegraphs and telephones, Key-
No. 10(9), 37 Cyc. 1632.